J-A10018-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ELTON MOLINA | : | |
| | : | |
| Appellant | : | No. 2704 EDA 2018 |

Appeal from the Judgment of Sentence August 24, 2018
In the Court of Common Pleas of Carbon County
Criminal Division at No(s):  CP-13-CR-0001109-2014

BEFORE:  GANTMAN, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY OTT, J.:                          **FILED MAY 31, 2019**

Elton Molina appeals from the judgment of sentence imposed August 24, 2018, in the Carbon County Court of Common Pleas.  The trial court sentenced Molina to an aggregate term of 11 to 22 years' imprisonment, following his jury conviction of robbery[1] and related charges for his participation in a gunpoint holdup of a grocery store in September of 2014. Molina's appeal focuses on the trial court's ruling that precluded him from introducing proffered evidence based on his failure to file a pretrial notice of alibi.  Because we agree with Molina that the proposed evidence did not constitute an alibi, and, therefore, he was not required to file a pretrial notice, we vacate the judgment of sentence and remand for a new trial.

---

[1] **See** 18 Pa.C.S. §3701(a)(1).

The facts underlying Molina's conviction, as presented during his jury trial, are aptly summarized by the trial court as follows:

Around 7:30 P.M. on September 10, 2014, a strong-armed robbery occurred at the Tresckow Superfood in Tresckow, Banks Township, Carbon County. Pennsylvania State Police obtained statements from various witnesses, one of whom identified, in general terms, what the two suspects were wearing.

This witness, Ashley Cannon (hereinafter "Cannon") testified that she was across the street from the Tresckow Superfood when she heard a commotion[1] and saw two individuals walking towards the Superfood. Cannon was able to initially identify these two individuals as African-American. One of these two individuals was wearing a darker jacket and dark pants. The jacket, as Cannon explained, had a hood which this individual had used to cover his head, and in the words of Cannon was "pulled tight", presumably in an attempt to obscure his face. Cannon next observed these individuals enter the store with the other shorter, stockier individual, striking the victim, Manoj Patel, with a gun. Molina was observed by Cannon, behind the counter. At that point Cannon ran to another location of the residence where she was visiting, but returned moments later to observe these same two individuals running from the store in the same direction from which they came.

_____

[1] Cannon described the "commotion" as whooping and clapping.

_____

The State Police also obtained a video from a nearby residence which depicts two similarly dressed individuals walking towards the scene prior to the time the robbery occurred and then moments later that same video shows what appears to be the same two individuals running away from the scene.

Found near the crime scene by the State Police was a right-handed glove and a $CO_2$ gun which was seized and retained as possible evidence in this investigation.

The victim, Manoj Patel, also testified regarding this incident. He described the attack by these individuals as well as the serious injuries he sustained from being struck. He also

provided testimony that mirrored that of Cannon regarding general descriptions of the individuals but more specific information regarding what they were wearing. Patel also testified that the individual with the hood pulled up was also wearing ski goggles.

During an unrelated criminal investigation involving Molina's co-defendant, Amir Edwards (hereinafter "Edwards"), police seized items of evidence from a vehicle including a left-handed glove, that matched the right-handed glove found near the crime scene, and a set of ski googles and a BC/BS card belonging to the victim, Manoj Patel. Edwards was a passenger in that vehicle at the time of the stop and prior to seizure of these items.

The Commonwealth then produced Michele Berger (hereinafter "Berger") as a witness. Berger was the ex-girlfriend of Molina and mother of his child, and was still friendly with him. Berger testified that at some time after this incident she had occasion to be in Molina's company and testified that Molina told her that the police wanted to talk to him about a robbery. Berger also testified that Molina showed her a selfie[2] of himself dressed in a black sweater (as Berger describes it) and wearing goggles. Molina asked Berger "if [she] could recognize him?" She testified that she could tell it was him. Berger also testified that Molina asked her for money to go to Canada and that Edwards[3] pistol whipped a man. Berger also testified that while being questioned by the police, she was shown the surveillance video from that same neighborhood camera and that one of the individuals in that video was wearing the same clothing that was worn by Molina in the selfie.

_____

[2] A selfie, for those who are not technologically advanced, is a picture of oneself taken by oneself.

[3] Berger testified that Molina referred to Edwards as "BooBoo" and that she knew Edwards by that nickname.

_____

The Commonwealth also called Lauren Force from the Bureau of Forensic Sciences at the Wyoming State Police Lab. Ms. Force was qualified as an expert in DNA analysis. She testified that she received two known DNA samples, one each from Molina and Edwards. She further testified that she analyzed several pieces of evidence including the gloves and ski go[g]gles. It was her expert opinion that the sample piece taken from the left-

handed glove contained DNA compatible to that of both Molina and Edwards. She further opined that neither of these individuals could be excluded as possible sources of the DNA found on this glove and based on her analysis that the likelihood of two other African–Americans providing that combination of DNA was one in 790 quadrillion and of two Hispanic individuals, one in 2.8 quintillion. Force also testified that, as to the goggles, she could not provide an opinion as the results of her testing were "uninterpretable", meaning there were too many overlaps in the DNA she found to specifically identify a source of the DNA found on the go[g]gles.

Trial Court Opinion, 10/18/2018, at 1-5.

Based on the above-stated evidence, Molina was arrested and charged with robbery, theft, conspiracy (two counts), and simple assault.[2] The case proceeded to a jury trial commencing on May 7, 2018.[3] After the Commonwealth rested its case-in-chief on May 8, 2018, Molina's counsel informed the court that a defense witness would not be available until the next day. **See** N.T., 5/8/2018, at 129. When the Commonwealth asked for an offer of proof, Molina's counsel stated: "He is going to be doing an identification of an individual." **Id.** The court then recessed the trial until the next morning.

On May 9, 2018, defense counsel called Daniel Shitovich as her first witness. The Commonwealth immediately asked to approach the court at

_____

[2] **See** 18 Pa.C.S. §§ 3701(a)(1), 3921(a), 903, and 2701(a)(1), respectively.

[3] Molina's co-defendant, Amir Edwards, entered a guilty plea to one count of robbery on September 20, 2016. His judgment of sentence was affirmed on direct appeal by this Court on May 1, 2019. **See Commonwealth v. Edwards**, ___ A.3d ___, 2305 EDA 2018 (Pa. Super. 2018) (unpublished memorandum).

sidebar, where it requested an offer of proof. *See* N.T., 5/9/2018, at 2. Defense counsel explained that Shitovich would establish a foundation for a video she intended to introduce. The video purported to show another individual (not Molina), dressed similarly to one of the perpetrators, using the victim's credit cards at a Giant Store in Hazelton several hours after the robbery at issue. *See id.* at 2-4. Counsel then intended to call a private investigator, who would identify the person in the video as Seth Hughes, not Molina. *See id*. at 3-4. The Commonwealth objected on the basis that Molina never provided a pretrial alibi notice. After a lengthy discussion, the trial court concluded Molina's counsel was attempting to present a "backdoor alibi" without having sent the requisite pretrial notice to the Commonwealth, and precluded the evidence from being admitted at trial. *Id.* at 23. The jury subsequently returned a verdict of guilty on the charges of robbery, theft, and two counts of conspiracy.[4] Thereafter, on August 24, 2018, the trial court sentenced Molina to an aggregate term of 11 to 22 years' imprisonment. This timely appeal follows.[5]

Although Molina identifies three issues on appeal, they all focus on the trial court's exclusion of his evidence concerning the Giant store surveillance

---

[4] The jury found Molina not guilty of simple assault.

[5] On September 4, 2018, the trial court ordered Molina to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Molina complied with the court's directive, and filed a concise statement on September 18, 2018.

video. Specifically, Molina argues the trial court erred or abused its discretion in concluding: (1) the proposed evidence constituted alibi evidence, for which Molina had neglected to file a pretrial notice of alibi; (2) the evidence was, in any event, not relevant; and (3) any error of the trial court was harmless. **See** Molina's Brief at 4.

Our review of a challenge to the trial court's exclusion of evidence at trial is guided by the following:

> The admissibility of evidence is within the sound discretion of the trial court, wherein lies the duty to balance the evidentiary value of each piece of evidence against the dangers of unfair prejudice, inflaming the passions of the jury, or confusing the jury. **Commonwealth v. Flor**, 606 Pa. 384, 998 A.2d 606, 623 (2010); **Commonwealth v. Dillon**, 592 Pa. 351, 925 A.2d 131, 141 (2007). We will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. **Flor**, 998 A.2d at 623; **Commonwealth v. Champney**, 574 Pa. 435, 832 A.2d 403, 416 (2003).

**Commonwealth v. Chamberlain**, 30 A.3d 381, 420 (Pa. 2011), *cert. denied*, 566 U.S. 986 (2012).

In his first issue, Molina contends the trial court "misapplied the law of alibi defense" when it determined his proposed evidence constituted an alibi, and, accordingly, excluded the evidence because Molina failed to provide pretrial notice to the Commonwealth pursuant to Pa.R.Crim.P. 567.[6]

---

[6] We note Molina consistently, and incorrectly, cites to Pennsylvania Rule of Criminal Procedure 305. The requirement that a defendant must file a pretrial notice of alibi was originally codified in Rule 305. However, in 2001, that Rule was renumbered as Rule 573, under the heading, "Pretrial Discovery and Inspection." **See** Pa.R.Crim.P. 573, Note. Subsequently, in 2006, Rule 567

When a defendant intends to offer an alibi defense at trial, Rule 567 requires the defendant file a notice of the alibi with the court, and serve it on the Commonwealth. *See* Pa.R.Crim.P. 567(A). The Rule mandates:

> The notice shall contain specific information as to the place or places where the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses whom the defendant intends to call in support of the claim.

Pa.R.Crim.P. 567(A)(2). Furthermore, if a defendant fails to file and serve the requisite notice of alibi, Subsection (B)(1) provides:

> [T]he court may exclude entirely any evidence offered by the defendant for the purpose of proving the defense, except testimony by the defendant, may grant a continuance to enable the Commonwealth to investigate such evidence, or may make such other order as the interests of justice require.

Pa R.Crim.P. 567(B)(1). Accordingly, "[t]he imposition of sanctions for violations of [Rule 567] rests in the sole discretion of the trial court." ***Commonwealth v. Zimmerman***, 571 A.2d 1062, 1067 (Pa. Super. 1990) (citations omitted), *appeal denied*, 600 A.2d 953 (Pa. 1991), *cert. denied*, 503 U.S. 945 (1992).

In the present case, Molina concedes he did not file a pretrial notice of alibi defense. However, he insists the evidence he intended to present did not constitute an alibi, and, therefore, he was not required to provide Rule 567 notice. We agree.

---

was codified to pertain specifically to the notice requirements for an alibi defense. *See* Pa.R.Crim.P. 567 ("Notice of Alibi Defense"), Comment.

"The long-accepted definition of alibi is 'a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party.'" *Commonwealth v. Roxberry*, 602 A.2d 826, 827 (Pa. 1992) (quotation omitted). *See also* Black's Law Dictionary (10th Ed. 2014) (defining "alibi" as "[a] defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time."). Indeed, "[a]ll that is required [to demonstrate an alibi defense is] that, due to separation, it is impossible for the defendant to have committed the crime." *Commonwealth v. Dennis*, 17 A.3d 297, 302 (Pa. 2011). A panel of this Court has explained:

> There is a difference between a "general denial of guilt" and an alibi. When the defendant generally denies his guilt, he is simply saying "I didn't do it." An alibi defense, on the other hand, not only declares "I didn't do it" but also says: "and it couldn't *possibly* have been me since I was someplace else when the crime occurred."

*Commonwealth v. Hall*, 867 A.2d 619, 636 (Pa. Super. 2005) (internal citation omitted), *appeal denied*, 895 A.2d 549 (Pa. 2006). Obviously, the focus of an alibi defense is the location of the defendant at the time of the crime.

As noted *supra*, a defendant who intends to present an alibi defense at trial must file a pretrial notice of this defense pursuant to Rule 567. "The purpose of the Rule is to insure 'both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or

innocence.'" ***Commonwealth v. Lyons***, 833 A.2d 245, 257 (Pa. Super. 2003) (quotation omitted), *appeal denied*, 879 A.2d 782 (Pa. 2005). In ***Commonwealth v. Fernandez***, 482 A.2d 567 (Pa. Super. 1984), a panel of this Court considered whether the notice rule violated a defendant's constitutional right to present a defense. ***See id.*** at 571. In concluding it did not, and that the trial court properly excluded the defendant's alibi evidence in the absence of proper notice, the panel opined:

> Rule [567] addresses the delicate balance between the interest of the accused in presenting a full and complete defense and the interest of the Commonwealth in avoiding fabricated alibis, unfair surprise, and the inevitable delay of justice wrought by an "eleventh-hour defense." ***See Williams v. Florida****,* 399 U.S. 78, 81–82, 90 S.Ct. 1893, 1895–1896, 26 L.Ed.2d 446 (1983). Appellant's argument is all the more poignant where he faces life sentences for his murder convictions.
>
> The Supreme Court of the United States has expressly reserved the question of the constitutionality of the preclusion of witness alibi testimony for noncompliance with notice provisions. ***Wardius v. Oregon****,* 412 U.S. 470, at 472 n. 4, 93 S.Ct. 2208, at 2211 n. 4, 37 L.Ed.2d 82 (1973); ***Williams v. Florida****,* 399 U.S. at 83 n. 14, 90 S.Ct. at 1897 n. 14, 26 L.Ed.2d 446 (1970). ***Williams*** is of particular interest to us. There, the Court held that a Florida statute requiring advance notice of an alibi defense was valid on its face. The Court reasoned that there is ample room in the adversary system for a rule "designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence." 399 U.S. at 82, 90 S.Ct. at 1896. Rule [567] serves this same pursuit of justice and is constitutional on its face.

***Id.*** at 571-572.

From these cases, we extract the following principles. An alibi defense is one that places the defendant at a different location than the scene of the

crime, so that it would have been physically impossible for the defendant to commit the offense. Furthermore, when a defendant intends to present an alibi defense, he must provide notice to the Commonwealth, detailing his location at the time of the crime, and listing any persons he was with, so that the Commonwealth may conduct its own investigation of the defense before trial.

In the case *sub judice*, Molina sought to present evidence that another person, wearing clothing similar to one of the perpetrators in the surveillance video, was caught on video in a Giant grocery store several hours after the robbery, using Patel's credit cards. ***See*** N.T., 5/9/2018, at 4. The trial court determined this evidence constituted a "back door alibi:"

> Since Molina was attempting to show that the person in the store video was the person who committed the crime and was present at the scene of the crime wearing clothing similar to that observed by eyewitnesses and on a video and on Molina's selfie and was someone other than himself, he is therefore placing himself elsewhere. By doing this, he was attempting to present an alibi defense or as this Court called it, a "back door alibi" by attempting to show someone else was at the scene wearing clothing observed and proving to be worn by the perpetrator as shown by the Commonwealth.

Trial Court Opinion, 10/18/2018, at 16-17. Because Molina failed to notify the Commonwealth of this proposed evidence before trial pursuant to Rule 567, the court excluded the evidence.

Here, however, we agree with Molina that his proposed evidence did not place him at a different location than the scene of the crime at the time of the offense. ***See Roxberry***, ***supra***; Molina's Brief at 20. In fact, the evidence

did not speak to Molina's whereabouts at all. Rather, Molina's proposed testimony - that another person, dressed similarly to the perpetrator who was "identified" as Molina,[7] was using the victim's credit cards a few hours after the crime – could create a reasonable doubt as to the identity of the perpetrator. A defendant is not required to notify the Commonwealth before trial of all exculpatory evidence he intends to present, including evidence such as in the present case, which supports a mistaken identity defense.

While the trial court found Molina's proposed evidence constituted a "back door alibi," it provides no authority for its ruling. Our research confirms an alibi constitutes evidence that the defendant was somewhere **other than** the scene of the crime; evidence that does not pertain to the defendant's location at the time of the crime does not constitute an alibi. Accordingly, we conclude the trial court erred when it precluded Molina's proposed evidence because he did not provide the Commonwealth with pretrial notice of an alibi defense pursuant to Pa.R.Crim.P. 567.[8]

_____

[7] It bears emphasis that the only witness who "identified" Molina as one of the masked robbers was Berger, and her identification was based solely on the clothing the perpetrator was wearing. Although Berger identified Molina in the surveillance footage on direct examination, she admitted under cross-examination that she believed the person was him because the perpetrator was "wearing the outfit that [Molina] had the selfie in." N.T., 5/8/2018, at 76. She also stated, "He wears that outfit a lot." *Id.* at 83.

[8] The trial court's insistence that Molina was attempting to "plac[e] himself elsewhere" by introducing this evidence runs afoul of a defendant's burden of proof in a criminal case. Trial Court Opinion, 10/18/2018, at 16-17. Indeed, Molina has no burden to explain where he was on the night of the robbery;

- 11 -

In his second issue on appeal, Molina argues the trial court's alternative basis for precluding the proposed evidence fails as well. The trial court found that even if the evidence did not constitute "a true alibi defense," the court "could have limited or denied this testimony on pure relevancy or hearsay grounds." Trial Court Opinion, 10/18/2018, at 17. The court opined:

> [The private investigator] could not have testified to any more than that he observed a person wearing similar clothing. He would not have been able to identify the person in the store video; he would not be able to make a comparison of the person in that video to the person in the other video; he would not be able to testify as to what that other person was doing … all of that would be inadmissible hearsay and properly excluded. Further, the quality of the evidence was suspect as well. As proffered by Molina, all [the private investigator] would testify to would be that the clothing was "similar" to that worn by the person identified by Commonwealth witnesses. There were no identifying logos or insignias on the clothing worn by the person in the Commonwealth video. Thus, it would be pure speculation for [the private investigator] to say definitely that it was the exact same clothing worn by the individual in the Commonwealth's video, Molina's selfie shown to Berger as well as the testimony of the eyewitnesses and the victim himself.
>
> …
>
> Even if Molina was attempting to show "misidentification" as a defense here, his proffered testimony falls woefully short to evidence this defense. The clothing worn by the individuals is not on trial; [Molina] is and the testimony proposed to be elicited from [the private investigator] was not going to the issue of misidentification of the person involved. Thus, it was properly excluded.

*Id.* at 17-18.

_____

rather, he need only hold the Commonwealth to its burden to prove beyond a reasonable doubt that he was one of the perpetrators.

Molina maintains, however, that the proffered evidence was "undoubtedly relevant" because it "tended to show that another individual committed the crime in question." Molina's Brief at 22. Again, we agree.

Pursuant to Pennsylvania Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. The trial court's ruling focuses on only one aspect of the proposed evidence – that is, a person wearing clothing similar to one of the perpetrators was captured on surveillance video hours after the robbery. If that was the full extent of Molina's proposed evidence, we would agree with the court's decision. However, the court ignores several key points concerning the evidence Molina sought to present.

First, according to counsel's proffer, the Giant surveillance video was provided to the defense **by the Commonwealth**, and pursuant to the state trooper's investigation, "[t]he person in the video used the [victim's] credit cards[.]" **See** N.T., 5/9/2018, at 3. Second, counsel stated the Giant surveillance video provided "a very clear shot of that person's face" and it is clear the person was not Molina.[9] N.T., 5/9/2018, at 14. When asked why the evidence was relevant, counsel explained: "He used the credit cards of the victim and he is wearing the exact same outfit that [Molina] was allegedly wearing when the robbery took place." **Id.** at 4.

_____

[9] Counsel also stated her private investigator ultimately identified the person in the Giant video as Seth Hughes. **See** N.T., 5/9/2018, at 3-4.

- 13 -

Third, the trial court downplays the similarities in the clothing worn by the perpetrator and the person observed in the Giant video. Both Cannon and Patel described one of the perpetrators as wearing light colored shorts and a dark jacket or hoodie, with the hood tight around his face, and covering his eyes with ski goggles. *See* N.T., 5/7/2018, at 100, 119, 142. Neither was able to identify the face of the perpetrator, and their description of the clothing was generic. The jury had the opportunity to observe the surveillance video of the perpetrators on the street, and a still photo that was derived from the video. *See id.* at 102, 166. Although Berger identified Molina on the surveillance video, she acknowledged she did so based solely on the clothing the perpetrator was wearing. *See* N.T., 5/18/2018, at 76. She explained Molina had shown her a photograph of himself wearing tan pants, a black sweater and goggles, which matched the outfit of the perpetrator in the video. *See id.* at 57-58, 76. That "selfie," however, was not introduced into evidence or shown to the jury. Accordingly, the similarities between Molina's outfit in the "selfie" and the perpetrator's generic black jacket and tan shorts was based solely on Berger's opinion. As Molina's counsel argued before the trial court:

> [I]t is not just about the clothing he was wearing. This is the same – this person used the victim's credit cards less than four hours later, on the same day, wearing the same outfit. It's not just a person off the street.

N.T., 5/9/2018, at 19.

- 14 -

Therefore, we find that, to the extent the trial court precluded Molina's proffered evidence on relevancy grounds, the court abused its discretion. The fact that another person (not Molina) was wearing the same clothing as the perpetrator hours after the robbery while attempting to use the victim's stolen credit cards is relevant to Molina's misidentification defense.

Lastly, Molina addresses the trial court's ultimate determination that, even if its decision was incorrect, the ruling would constitute harmless error. *See* Molina's Brief at 23-28.

The well-established analysis for determining if an erroneous evidentiary ruling constituted harmless error is as follows:

> Harmless error exists if the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was de minimis; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Hairston*, 84 A.3d 657, 671–672 (Pa. 2014), *cert. denied*, 135 S.Ct. 164 (U.S. 2014).

In the present case, the trial court concisely opined:

> [E]ven if the trial court was incorrect in its ultimate ruling, the refusal to allow this evidence is harmless error in light of the cumulative testimony identifying Molina as the perpetrator of these offenses, including Berger's testimony, DNA evidence and Molina's statements to Berger.

- 15 -

Trial Court Opinion, 10/18/2018, at 19.[10] However, Molina asserts, and we agree, the evidence presented at trial was not so overwhelming that the error could not have contributed to the verdict. *See* Molina's Brief at 25-28.

As noted *supra*, the "identification" testimony was speculative at best. Neither Patel nor Cannon identified Molina as one of the robbers. Furthermore, Berger identified him based solely on the clothing worn by the perpetrator, which she claimed was the same as clothing Molina was wearing in a "selfie" he showed her a few days later. Although Berger also testified that Molina made some incriminating statements to her, none of his statements amounted to an explicit confession,[11] and the weight to be accorded Berger's testimony was a question for the fact-finder. Finally, with regard to the DNA evidence, the only item which contained Molina's DNA

---

[10] The Commonwealth does not provide any further analysis of this argument. *See* Commonwealth's Brief at 6-7.

[11] Berger testified she and Molina spent the evening of September 13, 2014, together and stayed up all night drinking. *See* N.T., 5/8/2018, at 62-63. Sometime during the night, she claimed Molina told her "officers wanted to talk to him about something" and that "there was an incident with a robbery." *Id.* at 56. On direct examination, Berger testified Molina "just told me that his friend [Edwards] – they got in a car and robbed somebody" and that Edwards "[p]istol whipped a man." *Id.* at 57. She also stated he showed her picture of himself wearing tan pants, a black sweater and goggles, and asked "Can I recognize him." *Id.* at 58. Berger said they separated the next morning, but Molina called her later that afternoon and asked her for money "[t]o go to Canada" because "he wanted to run." *Id.* at 58-59. Under cross-examination, Berger conceded that Molina did not "exactly" say he committed a robbery, but rather, he told her "his friend did." *Id.* at 66. However, she did later state Molina told her his motive was "[t]o help pay his father['s] rent." *Id.* at 87.

profile was the left-handed glove, which was not recovered at the crime scene. *See* N.T., 5/8/2018, at 44, 115. While we could find this evidence was sufficient to sustain Molina's conviction, we are hard pressed to conclude the evidence supporting an inference guilt was so overwhelming, and the prejudicial effect of precluding Molina's proffered evidence was so insignificant, that it could not have contributed to the verdict.[12] Accordingly, Molina is entitled to a new trial.

In summary, we conclude: (1) the trial court erred in determining Molina's proposed evidence constituted an alibi defense, and (2) the court abused its discretion in finding that even if its initial ruling was incorrect, the proffered evidence was either not relevant, or was so insignificant in light of the overwhelming evidence of guilt that its ruling was harmless error. Consequently, we vacate the judgment of sentence and remand for a new trial.

Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.

---

[12] Neither the trial court nor the Commonwealth suggest the prejudice from the precluded evidence was *de minimis*, or that the precluded evidence would have been simply cumulative of other properly admitted evidence. *See Hairston*, *supra*.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/31/19</u>